DA 08-0304 and DA 08-0306

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 438N

IN THE MATTER OF

T.A-K. and J.A-K.

     Youths in Need of Care.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte Silver Bow, Cause No. DN 06-015-BN
and DN 06-16-BN
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jim Wheelis, Chief Appellate Defender; Joslyn Hunt, Assistant
Appellate Defender; Helena, Montana

    For Appellee:

        Hon. Mike McGrath, Montana Attorney General; Michael S. Wellenstein,
Assistant Attorney General; Helena, Montana

Submitted on Briefs:  November 19, 2008

Decided:  December 23, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(d), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    C.A.-K. appeals from orders entered the Second Judicial District Court, Silver Bow County, terminating his parental rights to his children, T.A.-K. and J.A.-K., and awarding permanent legal custody to the Montana Department of Public Health and Human Services ("Department"). We affirm.

¶3    On January 31, 2006, the Department filed Petitions for Emergency Protective Services, Adjudication as Youths in Need of Care and Temporary Legal Custody of T.A.-K. and J.A-K. The Department alleged that T.A.-K. and J.A.-K. suffered "[p]hysical neglect based on domestic violence within the home, the condition of the home, [C.A.-K.] being arrested, and the birth mother running away because of an outstanding warrant for her arrest." Sue Casey, a social worker, provided affidavits in which she stated that the children were Indian children subject to the Indian Child Welfare Act ("ICWA"), 25 U.S.C. §§ 1901-1963 (2006). The District Court issued an Order to Show Cause, Order Granting Emergency Protective Services and Notice of Show Cause Hearing. C.A.-K. and D.T.T., the birth mother, received notice of the show cause hearing and were informed that they would be "given the opportunity to admit or

2

deny the allegations contained in the petition and to provide testimony." The Department notified the Northern Cheyenne Indian Tribe of the involuntary child custody proceeding, the show cause hearing, and its right to intervene in the proceeding under ICWA.

¶4 An Adjudication and Temporary Legal Custody hearing was held on February 24, 2006. During the hearing, the District Court heard testimony from Edith Mae Adams ("Adams"), an ICWA qualified expert. Adams testified that C.A.-K. and D.T.T. needed "to work with the Department and get their problems taken care of before they can take care of their own children." C.A.-K. and D.T.T. attended the hearing and were represented by counsel. On March 20, 2006, the District Court adjudicated T.A.-K. and J.A.-K. as Youths in Need of Care and granted temporary legal custody to the Department for a period of six months. Treatment plans for C.A.-K. and D.T.T. were approved by the District Court in June.

¶5 On November 1, 2006, the District Court granted the Department continued legal custody of the children after hearing testimony that C.A.-K. and D.T.T. needed to work on completing their treatment plans. Thereafter, C.A.-K. filed a motion to transfer jurisdiction to the Northern Cheyenne Tribal Court. The District Court denied the motion upon learning that the Tribe refused to accept jurisdiction in the case. A permanency plan hearing was held on January 24, 2007. At the hearing, counsel for the Department informed the court that the permanency plan for the children was reunification with D.T.T., but that C.A.-K. had also indicated a willingness to work with the Department. On January 26, 2007, the District Court issued written permanency plan orders, in which it concluded that the plan for reunification was in the best interests of the children. The

District Court approved new treatment plans for C.A.-K. and D.T.T. in March, but temporary custody was again continued at a hearing held on July 2, 2007, to allow the parents to complete their treatment plans. On January 23, 2008, D.T.T. relinquished her parental rights and consented to the adoption of both children. Later that day, the court held another permanency plan hearing on a petition by the Department for permanent legal custody of T.A.-K. and J.A.-K. The permanency plan at this point was for the adoption of the children.

¶6 A hearing on the Department's petition to terminate the parental rights of C.A.-K. was set for April 30, 2008. Eight days prior to the scheduled hearing, on April 22, 2008, C.A.-K. filed a motion to dismiss the Department's termination petition. C.A.-K. claimed that a qualified ICWA expert was required to testify at the interim custody continuation and permanency plan hearings. The District Court denied C.A.-K.'s motion to dismiss on May 1, 2008, concluding that ICWA did not require the Department to present qualified expert testimony at "interim hearings where an Indian child already has been temporarily removed from the parent." The court noted that its findings were supported by the testimony of an ICWA qualified expert when it initially adjudicated the children as Youths in Need of Care and that C.A.-K. did not object to the lack of ICWA qualified expert testimony at any of the interim hearings.

¶7 On June 11, 2008, the court held a hearing on the Department's petition to terminate C.A.-K.'s parental rights. During the hearing, the court heard testimony from qualified ICWA expert Audrey Whiteman who stated, "I think the father needs a lot of anger management. And it wouldn't be safe for the kids to go back into that home." On

4

June 24, 2008, the District Court issued separate orders terminating C.A.-K.'s parental rights to T.A.-K. and J.A.-K. C.A.-K. filed this timely appeal, and the separate cause numbers for T.A.-K. and J.A.-K. were consolidated for review.

¶8 On appeal, C.A.-K. contends that the District Court erred by failing to hold a show cause hearing and by denying C.A.-K.'s motion to dismiss, which alleged that the Department failed to have an ICWA qualified expert testify at the custody extension and permanency plan hearings. The State argues that C.A.-K.'s claim regarding whether a show cause hearing was held or whether the statutory requirements for such hearings under § 41-3-432(4), MCA, were met, is not properly before this Court on appeal and that, regardless, C.A.-K. failed to demonstrate that he suffered prejudice or that the show cause hearing was fundamentally unfair. The State also argues that C.A.-K. is precluded from challenging the lack of expert testimony at the extension and permanency plan hearings because he failed to raise a contemporaneous objection to the lack of such testimony. Alternatively, the State argues that the District Court correctly denied C.A.-K.'s motion to dismiss, arguing that "ICWA does not require the Department to present qualified expert testimony at the extension of temporary custody hearings and permanency hearings."

¶9 As the State points out, C.A.-K.'s argument that the District Court erred by failing to hold a show cause hearing is disputed by evidence in the record. The District Court issued an Order to Show Cause, Order Granting Emergency Protective Services and Notice of Show Cause Hearing. C.A.-K. and D.T.T. were served with notice of the hearing and informed that they would be given the opportunity to admit or deny the

5

allegations in the petition. Further, the record clearly demonstrates that a hearing was held on February 24, 2006, and that the focus of the hearing was whether T.A.-K. and J.A.-K. were Youths in Need of Care. Further, it is undisputed that C.A.-K. and D.T.T. were independently represented by counsel at the hearing.

¶10 Since it is clear from the record that a show cause hearing was held, C.A.-K. apparently challenges whether the statutory requirements for show cause hearings under § 41-3-432(4), MCA, were satisfied. However, we have stated that "[t]his Court does not consider an issue presented for the first time on appeal." *In re A.N.W.*, 2006 MT 42, ¶ 41, 331 Mont. 208, ¶ 41, 130 P.3d 619, ¶ 41. We have also stated that "we will not fault a district court for failing to address statutory deficiencies that are not brought to its attention during the proceedings because doing so would encourage litigants to withhold objections rather than raise the issues appropriately in the district court." *In re A.N.W.*, ¶ 41. Since C.A.-K. did not raise an objection to whether the statutory requirements for the show cause hearing were complied with at the District Court, we decline to consider the issue for the first time on appeal.

¶11 C.A.-K.'s second argument that the District Court erred by failing to have an ICWA qualified expert testify at the custody extension and permanency plan hearings is also not properly before this Court on appeal. In order to properly preserve an issue for appeal, "a party must notify the court at the time the objectionable conduct is at issue." *In re A.T.*, 2006 MT 35, ¶ 15, 331 Mont. 155, ¶ 15, 130 P.3d 1249, ¶ 15. In this case, C.A.-K. did not notify the Court of any objection to the lack of ICWA expert testimony at the interim hearings until eight days before the District Court was scheduled to hold the

termination of parental rights hearing. Although C.A.-K. had four prior opportunities over the course of a year to object to the lack of such testimony, he failed to do so. However, even if C.A.-K. had properly objected in the District Court, ICWA does not require expert testimony at interim hearings. The express language of ICWA requires qualified expert testimony in proceedings involving foster care placement, which is defined as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home . . . where parental rights have not been terminated." 25 U.S.C. §§ 1912(e)(i); 1903(1). ICWA also requires qualified expert testimony in any action terminating the parent-child relationship. 25 U.S.C. § 1912(f). Since T.A.-K. and J.A.-K. had already been removed from the household, there was no need for qualified expert testimony at the interim custody continuation and permanency plan hearings. Further, it is undisputed that ICWA qualified testimony was provided at the show cause hearing on February 24, 2006, and the termination of parental rights hearing on June 11, 2008.

¶12 We have decided to determine this case pursuant to Section 1, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the record before us that the District Court did not err in the disposition of this matter.

¶13 Affirmed.

/S/ W. WILLIAM LEAPHART

7

We concur:


/S/ BRIAN MORRIS
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE